**FILED**

**DECEMBER 12, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

DEC 04 2007 aew
DEC 04 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.            )
                                            )
   SAM COOK #B-39841                         )
(Full name and prison number)               )
(Include name under which convicted)        )
                                            )
PETITIONER                                  )      CASE NO: _____
                                            )         (Supplied by Clerk of this Court)
        vs.                                 )
                                            )
   TERRY McCAINN                             )
(Warden, Superintendent, or authorized      )
person having custody of petitioner)        )
                                            )      **07CV6851**
RESPONDENT, and                             )      **JUDGE SHADUR**
                                            )      **MAGISTRATE JUDGE VALDEZ**
(Fill in the following blank **only** if judgment )
attacked imposes a sentence to commence     )
in the future)                              )
                                            )
ATTORNEY GENERAL OF THE STATE OF            )      Case Number of State Court Conviction:
                                            )
   LISA MADIGAN                              )         98-CR-30721
(State where judgment entered)              )

**PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY**

1.   Name and location of court where conviction entered: CIRCUIT COURT OF COOK COUNTY CRIMINAL

    DIVISON CHICAGO ILLINOIS 60608

2.   Date of judgment of conviction: MARCH 28, 2002

3.   Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

    TWO INDICTMENT FIRST-DEGREE MURDER

4.   Sentence(s) imposed: 42 YEAR AT 100%

5.   What was your plea? (Check one)        (A) Not guilty        ( X )
                                            (B) Guilty            (   )
                                            (C) Nolo contendere   (   )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

    NOT GUILTY

## PART I -- TRIAL AND DIRECT REVIEW

1.  Kind of trial:  (Check one):        Jury  ( X )            Judge only  (   )

2.  Did you testify at trial?    YES  ( X )            NO      (   )

3.  Did you appeal from the conviction or the sentence imposed?   YES  ( X )   NO (   )

    (A)  If you appealed, give the

        (1)  Name of court:   _1ST DISTRICT APP. COURT_

        (2)  Result:          _DENIED_

        (3)  Date of ruling:   _SEPTEMBER 17, 2003_

        (4)  Issues raised:   _DEFENDANT SAM COOK"S CONVICTION FOR FIRST DEGREE MURDER SHOULD_

      _BE REDUCED TO INVOLUNTARY-MAN-SLAUGHTER BECAUSE THE STATE FAILED TO PROCE BEYOND_

      _REASONABLE DOUBT THAT SAM COOK POSSESSED THE REQUISTE STATE FOR FIRST-DEGREE MURDER._

    (B)  If you did not appeal, explain briefly why not:

    _SEE ATTACHED_

4.  Did you appeal, or seek leave to appeal, to the highest state court?   YES ( X )       NO  (   )

    (A)  If yes, give the

        (1) Result    _FIRST DISTRICT OFFICE SUPREME COURT OF ILLINOIS DENIED_

        (2) Date of ruling:   _JANUARY 28, 2004_

        (3) Issues raised: _SEE ATTACHED_

    (B)  If no, why not: _____

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?   Yes (   )   No ( X )

    If yes, give (A) date of petition: _____  (B) date *certiorari* was denied:   _____

2

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( X )    NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.   Name of court:    CIRCUIT COURT OF COOK COUNTY CRIMINAL DIVISON

    B.   Date of filing:    OCTOBER 13, 2004

    C.   Issues raised:    SEE ATTACHED

    D.   Did you receive an evidentiary hearing on your petition?   YES ( )   NO ( X )

    E.   What was the court's ruling?   DENIED

    F.   Date of court's ruling:   FEBRAURY 10, 2005

    G.   Did you appeal from the ruling on your petition?   YES ( X )   NO ( )

    H.   (a) If yes,   (1) what was the result?   DENIED

                      (2) date of decision:   OCTOBER 17, 2006

         (b) If no, explain briefly why not: _____

    I.   Did you appeal, or seek leave to appeal this decision to the highest state court?

       YES ( X ) NO ( )

       (a) If yes,   (1) what was the result?   DENIED

                       (2) date of decision:   JANUARY 24, 2007

       (b) If no, explain briefly why not: _____

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?   YES (  )        NO ( x)

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1. Nature of proceeding                    _____

        2. Date petition filed                         _____

        3. Ruling on the petition                     _____

        3. Date of ruling                              _____

        4. If you appealed, what was
           the ruling on appeal?                      _____

        5. Date of ruling on appeal    _____

        6. If there was a further appeal,
           what was the ruling ?                       _____

        7. Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
           YES (  )   NO ( x)

   A. If yes, give name of court, case title and case number: _____

   _____

   B. Did the court rule on your petition?  If so, state

        (1) Ruling: _____

        (2) Date: _____

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

**YES (  )   NO ( x)**

If yes, explain: _____

_____

4

## PART III -- PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one _____
Supporting facts (tell your story briefly without citing cases or law):

SEE ATTACHED

_____

_____

_____

_____

_____

_____


(B) Ground two _____ SEE ATTACHED _____
Supporting facts:

_____

_____

_____

_____

_____

_____

(C) Ground three _____ SEE ATTACHED _____
   Supporting facts:

_____

_____

_____

_____

_____

_____

_____

(D) Ground four _____ SEE ATTACHED _____
   Supporting facts:

_____

_____

_____

_____

_____

_____

_____

2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
    YES (x)   NO ( )

3.  If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:

_____

_____

6

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing DON'T NO                OCTOBER 31, 1998

(B) At arraignment and plea   DON'T NO

(C) At trial MR. ANTHONY THOMAS MR. WILLIAM WOLF, MRS. MARISA COMEZ PUBLIC DEFENDER

(D) At sentencing MR. ANTHONY THOMAS, MR. WILLIAM WOLF MISS MARISA GOMEZ

(E) On appeal DIRECT APPEAL EVELYN BANIEVICZ, ON POST-CONVICTION BENJAMIM OVERBY

(F) In any post-conviction proceeding NONE

(G) Other (state):

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( X )

Name and location of the court which imposed the sentence:

Date and length of sentence to be served in the future

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on:
_____
         (Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
(Signature of petitioner)
B-39841
(I.D. Number)
P.O. BOX 112
(Address)
Joliet, Illinois 60434-0112

REVISED 01/01/2001

Subscribed to and sworn to
before me on this 2nd day of
Mar 2007 Crystal L Mason

"OFFICIAL SEAL"
Crystal L. Mason
Notary Public, State of Illinois
My Commission Exp. 11/10/2008

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same. *Querby*

SECOND DIVISION
October 17, 2006

No. 1-05-2085

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 30721 |
| | ) | |
| SAM COOK, | ) | Honorable |
| | ) | Henry R. Simmons, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant Sam Cook appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)).  He contends that the circuit court erred in dismissing his petition because he set forth the gist of several meritorious constitutional claims.

Following a jury trial in 2002, defendant was found guilty of first degree murder in connection with the shooting death of his wife, then sentenced to 42 years' imprisonment.  This court affirmed that judgment on direct appeal.  People v. Cook, No. 1-02-1313 (2003) (unpublished order under Supreme Court Rule 23).

On August 11, 2004, defendant filed a *pro se* petition for postconviction relief alleging, inter alia, prosecutorial

1-05-2085

issues on appeal.

Section 122-3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2004). Our supreme court has held that, in light of the plain language of section 122-3, and the prevailing standard of review (see Coleman, 183 Ill. 2d at 388), a claim not raised in a postconviction petition cannot be asserted for the first time on appeal (People v. Jones, 213 Ill. 2d 498, 508 (2004); People v. Jones, 211 Ill. 2d 140, 148 (2004); People v. McNeal, 194 Ill. 2d 135, 147 (2000)).

In this case, the claims that defendant seeks to advance on appeal were not included in his postconviction petition. As to defendant's claim regarding trial court error, our review shows that, in his petition, defendant argued that the trial court "erred and abused its discretion" in denying his motion for a mistrial in light of the court's ruling to allow "People's Exhibit #23," the intake form, to be admitted into evidence and published to the jury without a proper foundation. Defendant did not, however, assert that the trial court erred by failing to *sua sponte* give a clarifying instruction concerning the intake sheet.

As to defendant's ineffective assistance claims, our review shows that defendant raised numerous claims of ineffective assistance of trial counsel in his petition, and claimed that

- 3 -

APPENDIX "A"

STATE OF ILLINOIS    )

COUNTY OF WILL    )

## "AFFIDAVIT"

Now comes Sam Cook, and after being first duly sworn under oath, deposes and states as follows:

1.  I, Sam Cook, am the affiant and will be the undersigner of same.

2.  I'm presently incarcerated in Stateville correctional Center, in Joliet, Illinois 60434.

3.  I'm contesting that my attached petition for post conviction relief has been filed to set forth facts that my Constitutional rights under the Constitution of the United States and/or the State of Illinois has been violated, to wit: my 4th, 5th, 6th, and 14th Amendment Rights.

4.  Due to my present incarceration, I am unable to prepay the cost and/or give security for the filing of the attached petition for post conviction relief, pursuant to 725 ILCS 5/122 et seq.

5.  I do not own any property for which I can secure for the court the required filing fees for docketing of the attached petition for post conviction relief. Furthermore, I don't own any Stocks, Bonds, nor do I have any checking accounts.

6.  That, my mother, Milsie Cook, nor any one for that matter told me to to get rid of the gun in questioned.

7.  That, my brother recently visited me and told me that him and Mr. John Rankin was talking and that he, John Rankin wanted to sign a affidavit stating exactly why he testified against me.

8.  That, prior to my trial for murder of my wife, I informed my trial attorney, Mr. Anthony Thomas, that my signed confession was via coercion.  I also told my trial attorney that I didn't want to testify during my trial proceedings, however, he insisted that I testify before the trier of fact.

9.  That, I've got a meritorious claim within my attached petition for which I've been denied Due Process Of Law.

End Of Affidavit.

Subscribed to and sworn to before me on this the 22nd day of July, 2004

_____
Notary Public

My Commission Expires

Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

/S/ _Sam Cook_
Sam Cook
B-39841
P.O. Box 112
Joliet, Illinois
60434

139

APPENDIX "B"

AFFIDAVIT OF

SAM COOK

I, Sam Cook, the Affiant herein Declare and Depose after first
being Duly Sworn under Oath, and advised of the penalties of perjury,
State that the following Statements are Truthful and Accurate to the
best of my Knowledge and Belief, In That:

I am the Defendant/Petitioner in Case Number 98-CR-30721-01,
filed in the Circuit Court of Cook County, Illinois, and that this
Affidavit combined with my previous affidavit is supporting documentation
of facts to my "Amended" Petition for Post-conviction Relief.

While awaiting trial, I had a discussion with my Attorney concerning
the fact that while I was holding the Semi-Automatic Pistol, my wife
jumped up and bumped the weapon causing it to fire, that it was an
accidental shooting. I informed my attorney that on that evening of
the shooting, three other people was present in that area that night,
being my mother Milsie Cook, John Rankin, and Ericka Foster, and that
if he would talk to them, that they might have witnessed the accident,
that my concern was with my wife and not who exactly was there or came
after the accident, so as to what they could state I did not know. Mr.
Thomas told me he would find each possible witness and talk to them,
however, to my knowledge he never talked to any of them prior to my
trial and the State calling some of them to the stand.

I further told my attorney that the 25.-caliber Semi-Automatic
pistol was old and worn, and that a simple jolt could set it off, because
it had a hair-trigger where the slightest pressure would cause it to
fire, but that I had thrown the gun away, and to my knowledge the Police
had not recovered it. I also informed him that my mother had never told
me to throw the gun away, I did that on my own because I was scared and
devestated because it's what had hurt my wife, My intention was not to
hide it, that I just couldn't bear holding it, so I tossed it to the
ground.

I further informed my attorney that the Police had threatened me
repeatedly, I maintained that my wife's shooting was an accident, that
she had bumped the gun causing it to go off, These Interrogations lasted
hours on in, on and off, for two and a half days until the Police showed
me a photograph of myself with John Rankins signature on it, the Police
told me that John Rankins had stated I intentionally killed my wife, and
that he had Identified me, and that I better do as they say and give
a Statement so that I wouldn't lose all my life in prison, that the

State's Attorney would look favorable and wouldn't ask for a severe sentence if I would sign a Statement, At that moment, My will to continue was overborn, I was devestated in grief over my wife's death, and I had been continually harassed for two and a half days of repeated Interrogations and threats of abouse by the Police, I was shown my own photograph with John Rankins name on it, and I was lied to about what they said he told them, I was so overwelmed that I just couldn't take anymore, and I agreed to sign whatever they said to just leave me alone.

Mr. Thomas told me he would talk to a GunSmith, and that he would provide me with a copy of all the Police Reports and Statements of witnesses as the State provided them to him, so that we could go over everything together, However, I was never provided any of the Police Reports or Statements until after my trial was over, he gave me a copy of my own handwritten Statement and the one from John Rankin, Mr. Thomas never would discuss with me what was in the Police Reports, he was Blind, he never brought them with him when he visited.

When the State had presented their case, I was talking to Mr. Thomas about my testifying, I told him that I didn't know what good my testimony would do, and that maybe I shouldn't testify, because He hadn't provided any experts or presented the witnesses that the State hadn't (Ericka Foster) to support my testimony. He advised me that I was his sole case and that I had to testify. so based on his advise, I proceeded to testify.

I Sam Cook, Declare and Depose after first being Duly Sworn under Oath, State that the statements made in this (2)-page Affidavit are Truthful and Accurate to the best of my Knowledge and Belief.

_Sam Cook_
SAM COOK (Affiant)
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

SUBSCRIBED and SWORN to before me a NOTARY PUBLIC on this ⟶day

of __September_____, 2004.

OFFICIAL SEAL
SHERWIN K. MILES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2006

_____        _____
..mission Expires:              NOTARY PUBLIC

(Page 2 of 2 Pages)

APPENDIX "C"

page 1 of 1

STATEMENT OF

John Rankin

Taken October 29, 1998 At 02:15 Am

At Area 4 Police Headquarters

Present ASA Benish

Det. Baiocchi # 21032

This statement taken regarding the Homicide

of Fannie Cook which occurred on October 28, 1998

at 4023 W. Polk at 18:25.

I understand I have the right to remain silent and that anything I
say can be used against me in a court of law. I understand that I
have the right to talk to a lawyer and have him present with me
during questioning, and if I cannot afford to hire a lawyer one
will be appointed by the court to represent me before any questioning.
Understanding these rights, I wish to give a statement.

JR
GB
DB

After being advised that assistant State's attorney Benish
is a lawyer and a prosecutor, but not his
lawyer, John Rankin agreed to give the
following statement which is a summary
and not word for word.
     John Rankin states that he
is 32 years old. John Rankin states that
he can read and write English. John
Rankin states that he attended Manley
High School. John Rankin states that
he attended Manley High School for
2½ years. John Rankin states that
his date of birth is October 14, 1966.
John Rankin states that he lives
at 4024 W. Polk St, 1st floor - in

John Rankin     ASA Benish          [signature] 21032

Chicago. John Rankin states that he has lived at that address for 20 years. John Rankin states that he lives there with his mother, Addie Washington. John Rankin states that People's Ex "A" is a picture of Sam Cook. John Rankin states that he has known Sam Cook for about 20 years. John Rankin states that Sam Cook has lived at 4023 W. Polk street for 20 years. John Rankin states that he has done work with Sam Cook at Old Man's Tire Shop on Pulaski and Huron. John Rankin states that on October 28, 1998 he worked with Sam Cook at Old Man's Tire Shop. John Rankin states that after work, at about 5:00 pm, he and Sam Cook left work together. John Rankin states that Sam Cook drove him to Walnut Street to check on some work that Sam Cook had done. John Rankin states that before he and Sam Cook left work, Sam Cook talked to an "unknown black male who was in his 20's. John Rankin states that he overheard Sam Cook and this unknown black male talking about Sam Cook's wife,

ASA Bernih                Det. Dawin 21132              John Rankin

Fannie Cook. John Rankin states that the unknown black male told Sam Cook that Fannie Cook was seen with a person named "Carl". John Rankin states that he heard Sam Cook say that he was going to "fuck her up." John Rankin states that while he and Sam were driving to Walnut Street, he saw Sam Cook pull a gun out of his pocket and Sam Cook put the gun on the front seat. John Rankin states that he was sitting next to Sam Cook when he saw Sam Cook pull the gun out of his pocket. John Rankin states that the gun was an automatic. John Rankin states the gun was chrome. John Rankin states that when he and Sam Cook got to Walnut Street, they met up with a woman named Ericka, who John Rankin now knows to be Ericka Foster. John Rankin states that Sam Cook knew Ericka Foster. John Rankin JR states that after Ericka got into the car, he, Sam Cook and Erica Foster went to Sam Cook's house. John Rankin states that

ASA Benish      Det. Daruchi 2/23/02      John Rankin

on the way to John Cook's, Sam Cook was saying that he was going to "fuck her up", meaning Sam Cook wife, Fannie Cook. John Rankin states that when they got to Sam Cook's house, Sam Cook got out of the car. John Rankin states that Sam Cook went towards his house. John Rankin states that he got out of the car and went to his house. John Rankin states that about 15-20 minutes later, he went over to Sam Cook's house to get a trunk key for Sam Cook's car. John Rankin states he needed the trunk key to get a dull out of Sam Cook's car. John Rankin states that as he got onto the stairs that lead up to Sam Cook's apartment, John Rankin heard arguing. John Rankin states that he heard Sam Cook arguing with Fannie Cook. John Rankin states that Sam Cook and Fannie Cook were arguing about Carl. John Rankin states that when he got to the top of the stairs, Fannie Cook was sitting in a

ASA Benesh          Det. D. Davich          John Rankin

chair on the porch of Sam Cook's
Apartment. John Rankin states that
Sam Cook was standing over Fannie
Cook. John Rankin states that
Sam Cook was grabbing Fannie
Cook's shirt. John Rankin states
that Sam Cook was pushing Fannie
Cook's chest. John Rankin states that
while Sam Cook was pushing
Fannie Cook, they were arguing
about Carl. John Rankin states
that he saw a gun in Sam Cook's
hand. John Rankin states that the
gun Sam Cook had was the
same gun Sam Cook had in
his car. John Rankin states that
the gun Sam Cook had in his hand
was pointed at Fannie Cook's head.
John Rankin states that he heard
the gun go off. John Rankin states
that right after the gun went
off, Fannie Cook screamed. John
Rankin states that when he
heard Fannie Cook scream, he
ran back down the stairs and
went home. John Rankin states
that he only heard one gunshot.
John Rankin states that he never

A&A Benish                    Def Barowski 21032              John Rankin

the chai John Rankin states that he never sa Fannie Cook raise her arms. John Rankin states that he never saw Fannie Cook hit Sam Cook that night. John Rankin states that he has been treated well by the police and by assistant State's Attorney Benish. John Rankin states that he has been given coffee to drink and a Kit-Kat candy bar to eat. John Rankin states that he has been allowed to use the bathroom whenever he needed to. John Rankin states that no threats or promises have been made to him in return for this statement. John Rankin states that he is giving this statement freely and voluntarily. John Rankin states that he is free from the effects of drugs and alcohol. *John Rankin Det. Barros 21032*

ASA Benish

John Rankin states that he can read and write English and that he demonstrated this ability by reading the first few paragraphs of this statement out loud.

John Rankin states that Assistant State Attorney Benish then read the entire statement out loud to him. John Rankin states that he was allowed to make any corrections and changes to the statement that he wanted to. John Rankin Det. ___ arvedo 21222

A$A Benish

APPENDIX "D"

## "AFFIDAVIT"

I, John Rankin, sware under penalty of perjury, and after being first duly sworn under oath, deposes and states as follows:

1. That, in January of 2002, I had an opportunity to testify for the State of Illinois in <u>People v. Sam Cook</u>, in cause number 98-CR-30721, out of Cook County, Illinois, wherein, I gave coerced fabricated testimony during those trial proceedings.

2. That, Mr. Sam Cook, was subjected too trial for the murder of his wife, Fannie Cook, via the supra mentioned matters.

3. That, in October of 1998, during questioning by the State's attorneys and/or the Chicago Police detectives, concerning Fannie Cook's death, I never "ever" told them that I observed Sam Cook with a gun nor did I tell them I'd witnessed Sam Cook and Fannie Cook in a heated argument, nor did I tell them I observed Fannie Cook sitting in a chair while Sam Cook had a gun to her head.

4. That, I was summonsed to court by the State to testify for the State against Mr. Sam Cook a few days prior to my release from incarceration and that, per the State's attorneys, if I <u>DID NOT</u> testify for the State, they, i.e, the State, threatened me <u>with</u> a violation of probation. The State's threat enhanced my coerced testimony against Mr. Cook

5. That, the statement I gave back in or about October of 1998, alleging the events that led to Fannie Cook's death was coerced and/or fabricated by the State's attorneys whom wrote out those statements.

6. That, on the date I signed the statements against Mr. Sam Cook, I was high, i.e., intoxicated off of whiskey, etc., and that I signed the statement against Mr. Cook, "NOT" realizing how, at that time, I was being coerced by the State officials to sign those statements.

7. That, the statements I gave against mr. Sam Cook was in fact, coerced fabrication, and that, the prosecuting attorneys knew as much because just prior to my testimony at Mr. Cook's trial on January 29th, 1998, the State's attorneys showed me those statements and informed me that I would be testifying to those facts alleged therein those statements. I, at that point, told the State's attorneys that those statements were not accurate and that, I would not be testifying to those allegations. Nevertheless, those same coerced fabricated questions were imposed upon me during my trial testimony against Mr. Sam cook.

8. That, I'll be more than willing to testify in any subsequent court hearings on these herein matters to substantiate these herein facts I'm now attesting too.

Subscribed to, and sworn to before me on this 19th day of July , 2004

_____
Notary Public

/S/ _John Rankin_
John Rankin, Affiant

OFFICIAL SEAL
LUCELENA SOLIS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/04/05

APPENDIX "E"

Petitioner's Exhibit #2

STATE OF ILLINOIS     )
                         ) SS
COUNTY OF COOK     )


# A F F I D A V I T

I Marisa Gomez depose and say that the following is true and accurate:

I work for the Cook County Public Defender's Office. I am an Investigator for the office, but currently assist Anthony Thomas, assistant public defender, by being both his investigator and reader. On the date of January 30, 2002, I was sitting at defense table with Anthony Thomas during the Sam Cook jury trial. While assisting Mr. Thomas I observed one of the jurors nodding with her eyes closed. She was doing this for several minutes as I brought it to Mr. Thomas' attention. Because Mr. Thomas is blind, he requires my help in observations that he cannot make.


SUBSCRIBED and SWORN TO

before me this 9th,
day of March , 2002

Notary Public

"OFFICIAL SEAL"
MONIQUE P. HODGES
Notary Public, State of Illinois
My Commission Expires 4/22/2003

IN THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SAM COOM | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| | ) | |
| | ) | |
| −VS−− | ) | No.98−CR−30721 |
| | ) | |
| | ) | |
| | ) | |
| TERRY McCANN, (WARDEN) | ) | THE HONORABLE |
| | ) | HENRY R. SIMMON |
| DEFENDANT | ) | JUDGE PRESIDING |

MEMORANDUM OF LAW

AND

STATEMENT OF AUTHORITY

IN PETITION FOR

WRIT OF HABEAS CORPUS

SUBMITTED BY

SAM COOK

REG. No. B−39841

JOLIET, ILL. ¢)$#$

## STANDARD OF REVIEW

The determination of the Petition is dependent upon the Courts Ruling and Determination of Petitioner's "Pending" [Motion for Reconsideration for Good Cause, and, Motion for Leave to File "Amended" Post-Conviction Petition.]. Filed on or about September 9th, 2004.

This Petition is now before the Court for an initial determination of the legal sufficiency of the petition pursuant to Section 122-2.1 of the Illinois Post-Conviction Hearing Act (hereinafter, the "Act"). 725 ILCS 5/122-2.1 (West 2004); See: People v. Erickson, 183 Ill. 2d 213, at 222, 700 N.E. 2d 1027, at 1031-32 (1998). At this Stage of the proceeding, the Court is imply to determine without any input from the State, Whether the instant petition is frivolous or patently without merit. People v. Coleman, 183 Ill. 2d 366, at 379, 701 N.E. 2d1063 (1998); and/or dependent upon a ruling of a "Successive Petition" instead of an "Amended" Petition. See: People v. Flores, 153 Ill. 2d 264, at 273, 606 N.E. 2d 1078, at 1083 (1992); People v. Le May, 44 Ill. 2d 58, at 60, 254 N.E. 2d 476, at 477 (1969)(Submission of Post-Conviction Petition after dismissal of earlier petition requires evaluation of latter as a Successive petition rather than as an amendment). However, in this initial examination, The Court is mandated to closely scrutinize the supporting documentation attached to the Petition. People v. Hernandez, 283 Ill. App. 3d 312, at 316, 669 N.E. 2d 1326, at 1329 (4th Dist. 1996); People v. Lemons, 242 Ill. App. 3d 941, at 946, 613 N.E. 2d 1234, at 1238 (4th Dist. 1993).

The Court must recognize that the Act provides a remedy to a criminal defendant who claims that a substantial violation of his Constitutional rights occurred in the proceedings that resulted in his conviction. People v. Todd, 178 Ill. 2d 297, at 309, 687 N.E. 2d

999, at 1003 (1997). A Post-Conviction Petition is not an Appeal (per se), but is, instead, a collateral attack on a prior judgment. People v. Hawkins, 181 Ill. 2d 41, at 50, 690 N.E. 2d 999, at 1003 (1998). The purpose of the proceeding is to consider Constitutional issues that have not been raised, and could not have been previously adjudicated. People v. Johnson, 183 Ill. 2d 176, at 186, 700 N.E. 2d 996, at 1001 (1998).

In cases of Pro-se Petitioners under Sentence of imprisonment for a term of years, the Illinois [Supreme Court] has acknowledged that only the 'gist' of a Constitutional claim need be asserted in order to survive dismissal under Section 122-2.1 and to require the Appointment of Counsel under the Act. People v. Coleman, 701 N.E. 2d 1063, at 1071,n.2, citing: People v. Porter, 122 Ill. 2d 64, at 84, 521 N.E. 2d 1158 (1988); see also: People v. Seaberg, 262 Ill. 3d 79, at 82, 635 N.E. 2d 126 (1994). In order to proceed and obtain an evidentiary hearing, the Petitioner must demonstrate and establish a substantial violation of his State or Federal Constitutional rights in the proceedings that produced the judgment being challanged. People v. Tenner, 175 Ill. 2d 372, at 378, 677 N.E. 2d 859, at 862 (1997). Thus, the burden is on the Petitioner to set forth violations of his Constitutional rights and to support the allegations by affidavits, Records, or other evidence containing specific facts. People v. Guest, 166 Ill. 2d 381, at 389, 655 N.E. 2d 873, at 877 (1995) and/or sufficiently explain why the supporting documentation or evidence is not attached to the petition.

"CLAIMS FOR REVIEW"                                    PAGE

CLAIM-I
THE TRIAL COURT ERRED IN FAILING TO EXCUSE JUROR (MS. JOINER) FOR
CAUSE, WHICH DENIED PETITIONER HIS RIGHT TO TRIAL BY JURY WHERE
THE DEFENSE MADE A PRIMA FACIE SHOWING OF PREJUDICE, THUS,
DEPRIVING PETITIONER OF HIS CONSTITUTIONAL RIGHTS TO A FAIR AND
IMPARTIAL 12 MEMBER JURY TRIAL OF HIS PEERS.                        6

STATEMENT OF AUTHORITY---------------------------------------------- 7

CLAIM-II
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS
OF LAW AND A FAIR TRIAL WHERE THE PROSECUTION KNOWINGLY ENGAGED
IN MISCONCUCT BY KNOWINGLY PRESENTING WHAT IT KNEW, OR REASONABLY
SHOULD HAVE KNOWN WOULD BE FALSE TESTIMONY, WHERE THE PROSECUTION
PRIOR TO TRIAL COMMENCED ENGAGED IN COMMUNICATIONS WITH SAID
WITNESS "KNOWING" WHAT HIS TESTIMONY WOULD BE, THEREBY VIOLATING
PETITIONERS RIGHTS AS PROVIDED BY THE FIFTH, SIXTH, EIGHTH, NINTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS
WELL AS ARTICLE I, SECTIONS 2, 8, 10, 12 and 13 OF THE ILLINOIS
CONSTITUTION OF 1970                                                9

STATEMENT OF AUTHORITY--------------------------------------------- 11

CLAIM-III
PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND FUNDAMENTAL
FAIRNESS IN THE PROCEEDINGS WHERE THE TRIAL COURT ERRORED AND
ALLOWED THE STATE TO INTRODUCE "SPECULATIVE" AND "HEARSAY"
EVIDENCE THROUGH IT'S WITNESSES WHERE THE RELEVANCE DEPENDED
UPON UNPROVED ASSUMPTION, UNCERTAINTY OR OF A CONJECTURAL
NATURE WHERE IT'S PREJUDICIAL EFFECT OUTWEIGHED IT'S PROBATIVE
VALUE AND DENIED THE PETITIONER A FAIR TRIAL WHICH VIOLATED
PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.              15

STATEMENT OF AUTHORITY-------------------------------------------- 16

CLAIM-IV
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF
LAW AND A FAIR TRIAL WHERE THE PROSECUTION FAILED TO CORRECT WHAT
IT KNEW, OR SHOULD HAVE KNOWN WAS FALSE TESTIMONY, THUS, ALLOWING
THE STATE'S WITNESS TO COMMIT PERJURY TO NEGATE PETITIONER'S
DEFENSE, THUS, VIOLATING PETITIONER'S RIGHTS AS PROVIDED BY THE
FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS OF THE UNITED
STATES CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 2, 8, 10 and
12 OF THE ILLINOIS CONSTITUTION OF 1970.                           13

STATEMENT OF AUTHORITY-------------------------------------------- 18

CLAIM-V
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL IN PREPARATION OF PRE-TRIAL PROCEEDINGS BY
COUNSEL'S NEGLECT IN FAILING TO INVESTIGATE AND PRESENT A

"SUPPRESSION OF IDENTIFICATION" MOTION BASED ON THE "SUGGESTIVE"
IDENTIFICATION PROCEDURES EMPLOYED BY STATE OFFICIAL, THUS,
VIOLATING THE PETITIONERS RIGHTS PROVIDED BY THE FIFTH, SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
AS WELL AS ARTICLE I SECTIONS 8 AND 10 OF THE ILLINOIS
CONSTITUTION OF 1970.                                                    20

STATEMENT OF AUTHORITY--------------------------------------------------    21

CLAIM-VI
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL IN PREPARATION OF, AND DURING TRIAL BY
"NEGLECTING" TO CONDUCT A REASONABLE PRETRIAL INVESTIGATION AND,
THUS, FAILING TO BE COUNSEL OF CONSTITUTIONAL STANDARDS AS
PROVIDED BY BOTH THE UNITED STATES CONSTITUTION AND THE ILLINOIS
CONSTITUTION OF 1970. In That:                                          23

A.] Counsel failed to challange the State's "Assumption and
    Conjectural Evidence" by failing to subject the State's
    case to meaningful adversarial tests, and intelligently
    move the Court for funds and the need for an "Expert" in
    firearms pursuant to 725 ILCS 105/10(5).                           23

B.] Counsel failed to subject the State's witnesses to any
    meaningful adversarial tests by failing to conduct any
    pretrial investigations or interviews with potential
    State's witnesses prior to trial.                                  23

C.] Counsel failed to be counsel of Constitutional standards by
    failing to object to ASA Benish reading John Rankins alleged
    Handwritten Statement to the Jury after learning through the
    testimony that the Statement was a product of Intoxication
    and coercion and untruthful, Counsel ceased to be counsel of
    Constitutional Standards.                                          24

D.] Counsel failed to be counsel of Constitutional Standards by
    failing to conduct any pretrial investigation or make any
    efforts to Locate and Interview Ericka Foster who could
    have provided favorable testimony and refuted the testimony
    presented by State's witnesses.                                    25

E.] Counsel failed to be Counsel of Constitutional Standards by
    failing to reasonably discuss the State's evidence or share
    discovery Reports with the Petitioner so that he could aid
    in his own defense.                                                26

STATEMENT OF AUTHORITY--------------------------------------------------    26

CLAIM-VII
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL ON DIRECT APPEAL BY APPELLATE COUNSEL'S
FAILURE TO RAISE VARIOUS CONSTITUTIONALLY COGNIZABLE CLAIMS ON
DIRECT APPEAL, THUS, DEPRIVING PETITIONER OF HIS RIGHTS AS
PROVIDED BY THE UNITED STATES CONSTITUTION AS WELL AS THE
ILLINOIS CONSTITUTION OF 1970.                                         29

STATEMENT OF AUTHORITY------------------------------------------------    29

CONCLUSION----------------------------------------------------------    30

CLAIM - I

THE TRIAL COURT ERRED IN FAILING TO EXCUSE JUROR (MS. JOINER) FOR
CAUSE, WHICH DENIED PETITIONER HIS RIGHT TO TRIAL BY JURY
WHERE THE DEFENSE MADE A PRIMA FACIE SHOWING OF PREJUDICE, THUS,
DEPRIVING PETITIONER OF HIS CONSTITUTIONAL RIGHTS TO A FAIR AND
IMPARTIAL 12 MEMBER JURY TRIAL OF HIS PEERS.

Here, During the most important testimony (the defendants), while
presenting his version of the facts, a Juror was observed with her eyes
closed, with her head 'bobbing' for 'several minutes' by defense counsel's
assistant (Marisa Gomez)(Affidavit of Marisa Gomez APPENDIX "B"),who's
partial duty is to make observations that defense counsel cannot make
because he is "Blind". and therefore impossible for (Mr. Thomas) to
observe, However, once (Ms. Gomez) brought it to the attention of Defense
Counsel (Mr. Thomas), Defense asked the Court for a Side-Bar (Tr. D-167)
(APPENDIX "A") informing the Court of the Juror, and requesting simply
that to be safe she should be excused for cause and replaced with the
first alternate (Tr. D-167 thru D-173)(Appendix "A").

The Court off the record, called Ms. Joiner and inquired if she
happened to fall asleep at all during the testimony. (Tr. D-169 Lines
9-11)(Appendix "A"), However, (Ms. Joiner) in response stated:

"THE JUROR: I am listening to everything
but my eyes are kinda closed. I am not really
sleeping, just trying to pull them around."
(Tr. D-169 Lines 12-14)(APPENDIX "A").

The Court however, would not excuse the juror based on that
statement, The Court failed to inquire of the Juror if her head was
"Bobbing", or if she was previously "Yawning", and the Juror's statement
to the Courts question was insufficient to make a determination that
the juror was not in fact sleeping, in fact the Juror's response
supports the fact that the juror was 'caught' sleeping, and based on
her embarrassment responded that

"But my eyes are kinda closed. I am not really
Sleeping, just trying to pull them around".

-6-

The Response of the juror no less than 'confirmed' that she
was in such a state of struggle that she would be unable to concentrate
on the testimony, while her eye's were closed, not 'really sleeping'
and while trying to "Pull them around".

### STATEMENT OF AUTHORITY

The right to trial by jury includes the right to have the facts
in contraversy determined "Fairly" by the unanimous verdict of 12
impartial jurors. People v. Lobb, 17 Ill.2d 287, 161 N.E.2d 325 (1959).
The "Right" to a jury trial is guaranteed by the 1970 Illinois
Constitution, and a jury comprised of 12 members. Hartgraves v. Don
Cartage Company, 63 Ill.2d 425, 348 N.E.2d 457 (1976) Unless the parties
consent in open Court to a unanimous verdict of a jury of less than 12.
People v. Kelly, 347 Ill. 221, 179 N.E. 898 (1931) See Also: People v.
Chandler, 7 Ill.App.3d 949, 289 N.E.2d 67 (1st Dist. 1972)..

Here, The "Special circumstances" of a single juror sleeping or
at the least in a "Zone" of "Nodding" for several minutes during the
most critical point of the defenses case, being the (Defendants) version
of events suggests a constitutionally significant likelihood that such
"State of the juror" would "Prejudice" the defense and effect the
outcome of trial, where the juror would not have 'known' what the
(Defendants) version of facts were, relying solely on the majority of
other jurors to concentrate and consider those version of facts, The
Court plainly erred in failing to excuse this juror where the defense
made a prima facie showing of the likelihood of "Prejudice" as to this
single juror, wherein, not allowing the first alternate to proceed and
excuse the sleeping juror "Prejudice" can be presumed, which was Trial
Court error where defense was not seeking a mistrial, nor would excusing
the juror delayed the course of trial nor prejudiced the State.

The Issue here can be viewed under the applicability of Illinois

-7-

Supreme Court Rule 615(a) [134 Ill.2d R. 615(a)] by determining whether [Sam Cooks] claim falls within the category of "[p]lain error or defects affacting substantial rights.  This category includes errors that are so fundamental and or such magnitude, that they deny the accused a "Fair" proceeding. Such errors must be addressed--despite waiver-- to preserve the integrity of the judicial process. People v. Townsell, 270 Ill.Dec. 589, at 593, 783 N.E.2d 164 (Ill.App. 3 Dist. 2003).

CLAIM - II

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL WHERE THE PROSECUTION KNOWINGLY ENGAGED IN MISCONDUCT BY KNOWINGLY PRESENTING WHAT IT KNEW, OR REASONABLY SHOULD HAVE KNOWN WOULD BE FALSE TESTIMONY, WHERE THE PROSECUTION PRIOR TO TRIAL COMMENCING ENGAGED IN COMMUNICATIONS WITH SAID WITNESS "KNOWING" WHAT HIS TESTIMONY WOULD BE, THEREBY VIOLATING PETITIONERS RIGHTS AS PROVIDED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 2, 8, 10, 12 and 13 OF THE ILLINOIS CONSTITUTION OF 1970.

Here, It is asserted that the (State's Attorney) "Knowingly" engaged in what it knew to be "Misconduct", and thereafter "knowingly" presented what it knew was a "false" statement of "facts" during Opening Statements, thereafter, knowingly allow its own State's witness to Falsely testify, and "Impeach" it's own witness to nagate the petitioners defense.

Here, The (State's Attorney knowingly engaged in a "Pattern" of Misconduct concerning State's Witness (John Rankin).) As herein after set forth.

First, Here the (State's Attorney) engaged in communications and discussions with State's Witness (John Rankin) prior to trial and his testifying for the State.  The (State) discussed what "John Rankins" testimony would be, This State's witness advised the State's Attorney prior to testifying, That his previous Statement was not accurate and he would not be testifying to those alleged allegations (Affidavit of John Rankin, Paragraph #7)(APPENDIX "D"). The State's Attorney inquired during this communication with "John Rankin" exactly what was not accurate, The witness advised the State's Attorney that he was "intoxicated" and had been drinking whiskey when he initially signed the first Statement, and that he had never seen Sam Cook with a Gun, nor, heard a heated argument, but was approching the rear of the home through the gangway when he heard a "shot', and he turned around and went back home, Further, This witness advised the State's Attorney that in October 1998 he was forced

-9-

under "Threat" to continue the false testimony by the State's Attorney just a few days prior to his release from incarceration (APPENDIX "D", Paragraph #4). Therefore, The State's Attorney "prior" to calling State's witness (John Rankins) to testify knew exactly what his testimony would be.

Secondly, Thereafter trial commenced, and the (State's Attorney) presented it's "Opening Statement" (APPENDIX "E")(Tr. B-21 through B-26). Which the State's Attorney "Knew" was a "false Statement" of Fact concerning that the (State) "did not know what John Rankin was going to testify too when he steps into the Courtroom" (Tr. B-25), but the (State) knowing exactly what John Rankin was going to testify to, attempted to nagate that testimony and "Add credence" and credibility to an alleged pre-trial Statement (Appendix "C") of John Rankin, by proclaiming that either through his mouth or through a handwritten Statement given by John Rankin, substantive evidence of what he saw on the porch on October 27th, 1998, and you will hear evidence of the defendants guilt. (APPENDIX "E")(Tr. B-25) This comment was the prosecutor's own expression of the credibility of the "Hand Written Statement", and improperly suggested the use of the witnesses "out-of-Court" statement as "Substantive Evidence" of defendants guilt.

Thirdly, The Prosecution called State's Witness (John Rankin) to testify, knowing he was going to deny the contents of the Pre-Trial Statement, and that the Statement was taken under the influences of alcohol and was under coercion, and testify inconsistent to the Pre-trial "Out-of-Court" Statement, The State then attempted to get the Court to declare the witness "Hostile" to "Impeach" its own witness with inconsistent statements to add credence of credibility of the "Out-of-Court" statement as Substantive Evidence of defendants guilt to nagate petitioners defense of involuntary manslaughter. (APPENDIX "F")

-10-

(Tr. B-45 through B-48) Where the State declared that he was intending to examine the witness as a hostile witness (Tr. B-45) Because he was testifying completely inconsistent to the "out-of-Court" Statement, and the State's sole intent was to "Impeach" the witness with the Handwritten Statement (Tr. B-47-48) which was improper. The State then:

Fourthly, "capitalized" to "Add Credibility and Credence" to the Hand Written Statement of John Rankin by having it published to the Jury through Assistant State's Attorney (Anthony Benish) (APPENDIX "G") (Tr. B-103 through B-109). All of which has violated the Petitioner's State and Federal Constitutional rights to a fair trial. In Closing Argument, (APPENDIX "H") Vouching for the credibility of the out-of-court Statement.

### STATEMENT OF AUTHORITY

Here, the "Credibility" of the "Out-of-Court" Statement of John Rankin was essential to the State's case as an alleged sole eye-witness to negate the petitioner's defense of involuntary manslaughter. The (State) "knew" prior to trial that (John Rankin) was going to tesstify inconsistent to the Out-of-Court Statement as being a product of intoxication and coercion and simply untruthful and inaccurate, and that this witness never actually saw the events as described in the Out-of-Court Statement.

Thereafter, The State's Attorney engaged in a "Patter of Misconduct" to add "Credibility and Credence"  to the out of Court Statement and protrayed it as "substantive Evidence" of defendants guilt.

The Courts have long held that "Opening Statements" is an assertion of the Prosecutor's (Own) unsworn testimony in lieu of "facts" and "Evidence" (Known) to the Prosecutor. People v. Bunning, 233 Ill.Dec. at 188. Here, During "Opening Statements" the Prosecution "Knowingly" lied when he proclaimed he did not know what John Rankin was going to testify too when he steps into this Courtroom (Tr. B-25) because this

-11-

prosecutor had clearly discussed with (John Rankin) what his testimony would consist of prior to trial and prior to testifying. (APPENDIX "D") The sole act of the prosecutions actions throughout these proceedings was to "Add Credibilty" of the "Out-of-Court" Statement of (John Rankin) and improperly use it as "Substantive Evidence" of guilt of defendant. The Court here erred in permitting the State to call it's witness, knowing he was going to deny the credibility of the out-of-court Statement, "Impeach" him with the alleged prior statement implicating the defendant. The Unduly repetitious use of the prior statement (By Publishing it and reading it page by page through the testimony of an Assistant State's Attorney) in the prosecutions attempt to add substantive weight to the Statement in closing arguments exceeded the bounds of legitimate impeachment, and constituted an improper use of the out-of-court Statement as "Substantive Evidence". People v. Lucas, 58 Ill.App.3d 541, 374 N.E.2d 884 (1st Dist. 1978). It's improper for the State to have it's own witness called, Impeach him with a prior Statement, and then use such statement as "Substantive evidence of guilt" People v. Villalobos, 53 Ill.App.3d 234, 368 N.E.2d 556 (1st Dist. 1977). It is "Reversable Error" in allowing the prosecution to use an out-of-court statement of a State's witness as "Substantive Evidence, who's purpose of the State's Examination of their own witness was not only to impeach their own witness, but also to introduce an unsworn Statement as testimony of the defendants participation in a crime. People v. Robinson, 46 Ill.App.3d 713, 361 N.E.2d 138 (3rd Dist. 1977). The State's purpose was the "Impeachment" of (John Rankins) in Court Testimony was to "Cancel" out that testimony, and add "Credibility" to the Handwritten Statement as "Substantive Evidence". People v. Weaver, 92 Ill.2d 545, 442 N.E.2d 255 (1982). Here, During "Opening Statements" the Prosecution improperly expressed his personal beliefs as to the credibility of

-12-

State Witness (John Rankins) Out-of-Court Statement or his testimony as "Substantive Evidence" of defendants guilt. People v. Rogers, 172 Ill.App.3d 471, 526 N.E.2d 655 (2nd Dist. 1988).

For the reasons stated herein showing the "Patter of Misconduct" in order to improperly utilize the out-of-court Statement of (John Rankin) as "Substantive Evidence" to negate petitioners defense is Reversable Error that requires a New Trial.

The Furtherance of this Claim, is presented in the (Closing Argument) of the State, where the Prosecution during it's Closing Argument stated that John Rankins Out of Court Statement when given

> "back then it was the truth because the law understands that when something happens and you tell the--you tell that version close in time it's the truth." (Appendix "H")(Tr. E-31),

This Argument in improper in two ways, first, it furthered the improper conduct as alleged in this claim by adding "Credibility" to an "Out-of-Court" Statement as "Substantive Evidence" which exceeded the bounds of legitimate impeachment People v. Lucas, 58 Ill.App.3d 541, 374 N.E. 2d 884 (1stDist 1978) and constituted an inproper use of the Out-of-Court Statement as "Substantive Evidence".

Secondly, It was a Clear "Misstatemnt of Law" designed to show that the "Law believed an earlier Statement given by any witness is the "Truthful Statement", Wherein the (State) is vouching for the Credibility of (John Rankins) earlier Statement as being "Truthful" (Because) it was the most essential evidence of the State's Case, and without said evidence, the Jury would no doubt find that the shooting was "accidental" and "involuntary".

Further, The hand written Statement of (John Rankin) (APPENDIX "C") was not taken under affirmation or Oath, and thereby failed to meet the criteria of 725 ILCS 5/115-10.1 where it's admissibility only allows the "inconsistent" portions to be admitted, after redacting the portions

-13-

testified too, Only for purposes of "Impeachment" and "Not" as "Substantive Evidence". The "Personal Knowledge" requirement of 725 ILCS 5/115.10.1 is satisfied only when the declarant personally observed the events that are the subject matter of the Statement. <u>People v. Morales</u>, 281 Ill.App.3d 695, 666 N.E.2d 839 (1st Dist. 1996), Here, It is a clear fact that in (John Rankin's) alleged out-of-court Statement, it was proclaimed that he "Heard" arguing, and "Heard" a gun go off, but he did not see these events. (APPENDIX "C").

## CLAIM - III

PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND FUNDAMENTAL
FAIRNESS IN THE PROCEEDINGS WHERE THE TRIAL COURT ERRED AND
ALLOWED THE STATE TO INTRODUCE "SPECULATIVE" AND "HEARSAY"
EVIDENCE THROUGH IT'S WITNESSES WHERE IT'S RELEVANCE DEPENDED
UPON UNPROVED ASSUMPTION, UNCERTAINTY OR OF A CONJECTURAL
NATURE WHERE IT'S PREJUDICIAL EFFECT OUTWEIGHED IT'S
PROBATIVE VALUE AND DENIED THE PETITIONER A FAIR TRIAL WHICH
VIOLATED PETITIONERS STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

Here, Nowhere in any "Discovery" was a reference made to the
"Trigger Pull" of a 25-Caliber semi-automatic pistol required 15-pounds
of pressure to pull the trigger." The State in attempt to nagate the
Petitioners defense of involuntary manslaughter "Fabricated" that
the defendants alleged confession derived from the Assistant State's
Attorney's mentioning that if the weapon was discovered, or one similar
to it was tested, that it would show that it took 15-pounds of pressure
to pull it's trigger, and therefore defendants assertion that the gun
went off by accident when the victim bumped it getting up was unbelievable
at which point the defendant allegedly decided to tell the Truth.

Here, The Trial Court failed to ascertain the prejudicial effect
over the probative value of this "Hearsay" testimony that was based on
"Unproved Assumption", "Uncertainty", and of which was of a "Conjectural
Nature", Thereafter allowing Detective Evans (APPENDIX "I")(Tr. C-29
through C-35) to testify concerning this Hearsay Evidence of ASA Romito's
alleged confrontation with the defendant and allegedly mentioning the
"Speculative" and "Assumption" of a 25-Caliber Semi-Automatic having a
15-pound Trigger Pull. and (ASA Ashley Romito's) testimony (APPENDIX "J")
(Tr. D-5 through D-10) concerning this alleged 15-Pound Trigger Pull
as the basis for the defendants alleged Handwritten Statement.

Here, Based on the beforementioned testimony as to this Hearsay,
Speculative, Unproved Assumption of a conjectural nature allowed the
jury to deliberate with the "false Impression" that the State had

-15-

provided evidence that the weapon in question being a 25.-caliber semi-automatic in fact took (15)-pounds of pressure on the trigger for the weapon to discharge, where in fact, That is an "Unproven Assumption" where the weapon was not recovered, nor tested by any expert to attest to that fact. Here, ASA Ashley Romito is not a qualified expert in firearms, nor, had ASA Romito consulted with a "Firearms Expert", and had she done such, she would have learned that (if) the weapon was 'worn', or 'altered' the trigger pull of almost every semi-automatic pistol can be reduced to less than 1/8-pound of trigger pull pressure to discharge the weapon (A Hair-Trigger), and that 15-pounds of pressure is "Above" and "Beyond" the pressure required to pull most if not every Factory Model Semi-Automatic firearms, Which normal pressure is less than (2)-pounds. This evidence through State's Witnesses (Detective Evans) and (ASA Romito) was extremely "Prejudicial" and denied petitioner Due Process and a fair trial.

## STATEMENT OF AUTHORITY

Evidence is inadmissible where its relevance depends upon unproved assumptions. People v. Newbury, 53 Ill.2d 228, 290 N.E.2d 592 (1972). Generally, the Standard of review for questions involving admissions of evidence is "Abuse of Discretion". People v. Reid, 179 Ill.2d 297, 688 N.E.2d 1156 (1997). Here, the "Prejudicial Effect" allowing the jury to "Speculate" on "Unproven Assumptions" that was based on and of a Conjectural nature denied the accused a fair trial, and it was an abuse of discretion where the trial judge failed to determine that the evidence had little probative value because of it's "uncertainty" and "conjectural Nature", and where the State proceeded with this "Unproven Assumption. See: e,g, People v. Garner, 47 Ill.App.3d 529, 362 N.E.2d 14 (5th Dist. 1977); See Also: People v. Mosley, 68 Ill.App.3d

721, 386 N.E.2d 545 (1st Dist. 1979); <u>People v. Rivera</u>, 145 Ill.App.3d
609, 495 N.E.2d 1088 (1st Dist. 1986).

## CLAIM - IV

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL WHERE THE PROSECUTION FAILED TO CORRECT WHAT IT KNEW, OR SHOULD HAVE KNOWN WAS FALSE TESTIMONY, THUS, ALLOWING THE STATE'S WITNESS TO COMMIT PERJURY TO NEGATE PETITIONER'S DEFENSE, THUS, VIOLATING PETITIONERS RIGHTS AS PROVIDED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I, SECTIONS 2, 8, 10 AND 12 OF THE ILLINOIS CONSTITUTION OF 1970.

Here, This Claim is "Incorporated" with the assertions of "Facts" as previously outlined in (CLAIM -II) herein. The State's Attorney knowing engaged in Misconduct, and knowingly presented false testimony of State's Witness (John Rankin), which the State prior to testifying knew would be 'contrary' to his earlier alleged Handwritten Statement (APPENDIX "C"), Wherein, when this "inconsistent" testimony appeared, the State's Attorney "capitalized" on the inconsistent statements instead of correcting the false testimony when it appeared, The State's attorney moved to declare the witness "Hostile" without presenting the witness with any foundation of the prior inconsistent statement. The State's deliberate actions in presenting what it knew to be false testimony, was for the sole purpose to protray "Credibility" of the "Prior Out-of-Court Statement" as protrayed throughout the improper State's Arguments.


## STATEMENT OF AUTHORITY

The State's knowing use of what it knew or believed was false testimony (Throughout these proceedings concerning State's Witness John Rankin, because the Prior Statement was essential to the State's Case) denied petitioner Due Process. People v. Olinger, 176 Ill.2d at 351-52, 223 Ill.Dec. 588, 680 N.E.2d 321 (1997)(considering a Brady argument "closely tied" to knowing use of false testimony).

Based on the beforementioned the prosecution engaged in misconduct

in it's subornation of perjury of it's key-Eye-Witness, Wherein the
use of perjured testimony to obtain a criminal conviction violates
due process of law. People v. Ellis, 249 Ill.Dec. 132, 735 N.E.2d 736
(Ill.App. 1 Dist. 2000); People v. Olinger, 176 Ill.2d 326, at 345,
223 Ill.Dec. 588, 680 N.E.2d 321 (1997). In Olinger: "Even where the
prosecution did not solicit false testimony, but allows it to go
uncorrected when it appears, due process is violated. Napue v. Illinois,
360 U.S. 264, at 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), In Napue:
"A conviction obtained by the knowing use of perjured testimony, which
reasonably could have affected the jury's verdict, will be set aside."
Olinger, 176 Ill.2d at 345, 223 Ill.Dec. 588, 680 N.E.2d 321 (1997);
Ellis, 249 Ill.Dec. at 137, 735 N.E.2d 736 (Ill.App. 1 Dist. 2000).

The Court is faced with the question of whether there is a
reasonable likelihood that the false testimony could have affected the
verdict and decision. People v. Diaz, 297 Ill.App.3d at 370, 231 Ill.Dec.
523, 696 N.E. 2d 819 (1998). It is undisputable that the "False Perjured
Testimony" of State's Witness (John Rankin) was the "cornerstone" and
"Backbone" of the State's case to negate petitioner's presented defense
of Involuntary Manslaughter.

This Issue can be more fully developed and more evidence presented
"After" reviewing and obtaining the "Pre-Trial Discovery" materials that
have not been provided to the Petitioner.

Based on the beforementioned, The State's knowing use of Perjured
Testimony of it's Only alleged Key-Eye-Witness violated Petitioners
Constitutional rights, and denied petitioner a fair trial, For this
reason, this case must be reversed and remanded for a New Trial.

CLAIM - V

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL IN PREPARATION OF PRE-TRIAL PROCEEDINGS BY
COUNSEL'S NEGLECT IN FAILING TO INVESTIGATE AND PRESENT A
"SUPPRESSION OF IDENTIFICATION" MOTION BASED ON THE "SUGGESTIVE"
IDENTIFICATION PROCEDURES EMPLOYED BY STATE OFFICIALS, THUS,
VIOLATING THE PETITIONERS RIGHTS PROVIDED BY THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS
WELL AS ARTICLE I, SECTIONS 8 AND 10 OF THE ILLINOIS
CONSTITUTION OF 1970.

Here, It is asserted that counsel failed to properly investigate

the pre-trial Police Reports and Pre-Trial Statements of witnesses,

sufficiently in preparation of trial, and had counsel done so, he would

have determined that under the totality of circumstsnces that the

Police had inproperly utilized a "Suggestive" Identification procedure,

and thereafter filed a Motion To Suppress those Identifications as

being unreliable subjecting the State's case to meaningful adversarial

testing.

Here, Counsel was 'impaired' because he was blind, and failed to

have the assistance necessary to adequately review the "Discovery"

material prior to trial, had counsel had such assistance he would have

learned in the "Police Reports" and in the State's witness "Statements"

that the Police were using a "Single Photograph" of the defendant for

witness "Identification", when the defendant himself was available and

in custody for a Line-up, this Procedure utilized by Police was Unduly

"Suggestive" and showed the witness that they were focusing on a

"Single Suspect" which likely caused "irreparable" later in-court

Identifications. Counsel failed to act in accordance and below the

Standard of competent representation by failing to file a "Motion to

Suppress" where evidence of "Suggestive Identification Procedures" were

evidenced in the pre-trial Statements of the State's witnesses. See:

(APPENDIX "C")(Statement of John Rankin) verifying the Police use of

a "Single Photo" of defendant for "Identification", while defendant was

-20-

in "Custody" and readily available for a Line-up. See also: (APPENDIX
"G")(Tr. B-104) and (APPENDIX "F")(Tr. B-56) verifying the use of a
"Single Photo" of Defendant for the "Suggestive Police Identification".
Which violated petitioners rights to a Identification procedure.

### STATEMENT OF AUTHORITY

An accused is entitled to a fair identification procedure and
is deprived of due process if the totality of the circumstances of a
pretrial confrontation are unnecessarily suggestive and conductive
to mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct.
1967, 18 L.Ed.2d 1199 (1967), Moreover, Photo identification procedures
should not be used when a suspect is in custody, permitting a line-up,
unless circumstances justify the use of photo's. Simmons v. United
States, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967 (1968).

Here, There were no circumstances to justify the use of a "single
Photo" of the defendant for "identification" purposes when the defendant
was "In Custody" and available for a Line-up Procedure.

Further, This "Single Photo" of defendant was "Not" shown in a
"Photo Array" with other persons, but was "Shown" (By Itself) which
was unduly "Suggestive" and showed that Police Authorities were focused
on a "Single Suspect", Wherein this needlessly suggestive procedure
Tainted the subsequent "identification" of the defendant by this witness
which resulted in unreliable Identification and testimony. Here, This
"Tainted" Identification Procedure bore poisonous fruit, Authorities
utilized this "Identification" which was "Suggestive" to apply pressures
against the defendant throughout the On-and-off two-and-a-half days of
his Interrogation until his will was overborn and he signed a written
Statement drafted by the State's Attorney.

Here, Once the impropriety of the Identification procedure is

-21-

and has been shown, the Prosecution must show "Clear and conviencing evidence that each identification was not influenced by the unnecessary and suggestive procedure. United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967). The indicia of reliability must be weighed against the corrupting effect of the suggestive identification itself. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d at 154 (1977) Given the undeniable "Suggestiveness" of the Identification Procedures used by Authorities, there is a very substantial likelihood of irreparable misidentification.

The State bears the heavy burden to show that a later 'in-Court' identification is admissible. Cossel v. Miller, 229 F.3d 649 (7th Cir. 2000), Thus, this burden can only be placed on the State (If) counsel subjects the State's Identification procedures to meaningful adversarial testing, and acts in accord with the Standard of competent representation, guaranteed by the Sixth Amendment.

The right to counsel guaranteed by the Constitution is the right to the effective assistance of counsel. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, at 2044 (1984).

Counsel has a "Duty" 'To bring to bear such skill and knowledge as will render the proceedings a reliable adversarial testing process." Moreover, Counsel has a "Duty" to make a reasonable investigation or to make reasonable decisions that make particular investigation unnecessary. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, at 2066 (1984); See also: Patrosso v. Nelson, 121 F.3d 297 (7th Cir. 1997); Hall v. Washington, 106 F.3d 742, at 749 (7th Cir. 1997).

Here, Counsel failed to file a Motion to Suppress the Identification procedures utilized by authorities as being unduly suggestive, and thereafter file a Motion to Suppress other evidence born from this Illegal Identification Procedure. Petitioner must be granted a New Trial.

-22-

CLAIM - VI

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL IN PREPARATION OF, AND DURING TRIAL BY
"NEGLECTING" TO CONDUCT A REASONABLE PRETRIAL INVESTIGATION
AND, THUS, FAILING TO BE COUNSEL OF CONSTITUTIONAL STANDARDS
AS PROVIDED BY BOTH THE UNITED STATES  CONSTITUTION AND THE
ILLINOIS CONSTITUTION OF 1970. In That:

A.]   Counsel failed to challange the State's "Assumption and
      Conjectural Evidence" by failing to subject the State's
      case to meaningful adversarial tests, and intelligently
      move the Court for funds and the need for an "Expert" in
      Firearms pursuant to 725 ILCS 105/10(5).

Here, The (State) through Detective Evans and Assistant State's

Attorney Ashley Romito were able to testify that ["If the weapon was

Recovered, or one like it was tested, It would take 15-pounds of

pressure on the trigger to discharge the weapon'"]. This "Unproved

Assumption" based on and of a "Conjectural nature" severely prejudiced

the petitioner's defense, allowing the jury to deliberate with a false

impression that the (State) had provided evidence that it took 15-pounds

of pressure to pull the trigger, and therefore, the gun going off

could not have been accidental, nagated the defense presented by counsel,

Counsel, should have had the intelligence to move the Court for the

need of an "expert" in firearms, to present evidence contrary to the

State's Unproved Assumption testimony. Counsel has a duty to challange

the scientific aspects of the State's case. Not providing such an

"expert" severely prejudiced the defense in their assertion that the

victim had inadvertantly bumped the weapon and it accidentally fired in

the presented defense of involuntary manslaughter.

B.]   Counsel failed to subject the State's witnesses to any
      meaningful adversarial tests by failing to conduct any
      pretrial investigations or interviews with potential
      State's witnesses prior to trial.

Here, Counsel failed to conduct any pretrial investigation in

-23-

regards to State witness (John Rankin), had counsel done so, counsel would have learned that the State had obtained his alleged pre-trial Statement while he was "intoxicated" after drinking over two-half pints of Whiskey, and that (John Rankin) had informed the State's Attorney that his "Pre-Trial Statement (APPENDIX "C") was in fact "fabricated" and "untruthful" and that (Rankins) was "Threatened" by the State's Attorney that if he did not testify to what was in the Handwritten Statement drafted by ASA Romito, that his Probation would be violated. (APPENDIX "D")(Affidavit of John Rankin), Wherein Counsel if he had conducted an interview and meaningful investigation of this Only alleged key-Material-eye-witness, he could have presented a Motion in Limene and effectively prevented the State's use of the alleged out-of-court Statement of (John Rankin) based on it being unreliable based on his Intoxication and Coercion. Counsel failed to reasonably conduct any pretrial investigation and deprived the petitioner of the effective assistance of counsel.

C.]  <u>Counsel failed to be counsel of Constitutional standards by failing to object to ASA Benish reading John Rankins alleged Handwritten Statement to the Jury after learning through the testimony that the Statement was a product of Intoxication and coercion and untruthful, Counsel ceased to be counsel of constitutional Standards</u>.

Here, Counsel failed to be counsel of Constitutional standards by failing to meaningfully subject the State's case and its witnesses to meaningful adversarial tests, and by failing to act in the best interest of his client and holding the State to it's burdens of proof after learning that John Rankins out-of-court Statement was obtained while he was excessively intoxicated and under coercion, and that John Rankin had previously informed the State's Attorney that the alleged Statement was false, and that he had not actually observed what was protrayed in the Statement, and as a result, the State's Attorney

-24-

implimented it's antic's of tampering of a alleged material witness
and "threatened" the witness with furthered Incarceration if he failed
to testify to the false Statement. This action of counsel in failing
to hold the State to it's burdens and meaningfully subject the State's
assertions to any meaningful adversarial tests, and properly object to
the Statement of John Rankin being published to the jury, Counsel fell
below a level of reasonable competent representation, and thus, was
ineffective and violated petitioners constitutional rights. See:(Tr. B-131
32)(APPENDIX "K").

D.] <u>Counsel failed to be counsel of constitutional Standards by
failing to conduct any pretrial investigation or make any
efforts to Locate and Interview Ericka Foster who could
have provided favorable testimony and refuted the testimony
presented by State's witnesses.</u>

Here, Counsel knew that Ericka Foster was listed by the State
as a potential witness and that her testimony was relevent and
was allegedly the basis of "Probable Cause" for defendants arrest, and
for the Detective's progress of the investigation and questioning of
(John Rankin) according to the testimony of Detective Sam Cirone (Tr.
B-134 through B-142), Here Detective Cirone proclaimed that Ericka
Foster was interviewed by him in which she allegedly identified (John
Rankin) and other events concerning the defendant which effected  the
Probable Cause of defendants arrest. Counsel possessed Detective Sam
Cirone's Progress Report which is not available to petitioner to attach
to this petition, in support hereof, Wherein, While in possession of
this Progress Report counsel was aware of witness (Ericka Foster) which
was the 'basis' of probable cause for petitioners detention and arrest,
Counsel had a "Duty" to investigate and challange the Arrest by filing
a Motion to Quash the arrest based on the fact that (Ericka Foster) was
never interviewed by Detective Sam Cirone, had counsel conducted a
reasonable investigation into petitioner's arrest, or otherwise made

-25-

a reasonable effort to locate and interview (Ericka Foster) who was
potentially not only an occurance witness, but was present on the
scene when the offense occurred, who could have provided favorable
evidence to the defense and supported petitioners defense of Involuntary
Manslaughter. Counsel's failure to recognize a potential eye-witness
who all alleged persons involved in pre-trial statements mentioned was
on the scene, who could have supported petitioner's defense, and counsel's
failure to make any effort to locate or interview this witness is
ineffective assistance of counsel.


E.]  Counsel failed to be counsel of Constitutional Standards by
     failing to reasonably discuss the State's evidence or share
     discovery Reports with the Petitioner so that he could aid
     in his own defense.

     Here, Counsel failed to provide the petitioner with the Police
Reports and other pretrial discovery materials, effectively preventing
the petitioner from aiding in preparation of his defense, further,
counsel inadequately discussed the State's potential evidence with
the petitioner, nor discussed what any alleged State's witness testimony
may be prior to trial be conducted. There is no reasonable explination
why counsel would not provide or discuss the pretrial discovery material
with the petitioner so that he could aid in preparation of his defense.


                        STATEMENT OF AUTHORITY

     Petitioner incorporates the Affidavit's of Petitioner (APPENDIX "L")
in support of this Claim, Further, Petitioner incorporates the allegations
of other claims of ineffective assistance of Counsel included in his
Original Petition for Post-Conviction Relief, and in other claims of
Ineffective Assistance of Counsel in this "Amended Petition".

     The right to counsel guaranteed by the Constitution is the right

                              -26-

to the effective assistance of counsel. United States v. Cronic, 466
U.S. 648, 104 S.Ct. 2039, at 2044 (1984); McMann v. Richardson, 397
U.S. 759, 90 S.Ct. 1441, at 1449 (1970); Gidion v. Wainwright, 372
U.S. 335, 83 S.Ct. 792 (1963). And "[a]lthough we ought not use the
power of hindsight to second-guess the tactical decisions of counsel,
neither ought we use that same power to construct theories of defense
for a counsel whose lack of professional effort is clear from the pages
of the record." Emerson v. Gramley, 91 F.3d 898, at 909, (7th Cir. 1996).

Counsel has a "Duty" "To bring to bear such skill and knowledge
as will render a trial a reliable adversarial testing process.", Moreover,
Counsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations unnecessary.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, at 2066 (1984);
See also: Patrosso v. Nelson, 121 F.3d 297 (7th Cir. 1997); Hall v.
Washington, 106 F.3d 742, at 749 (7th Cir. 1997).

To obtain relief under Strickland, a defendant must plead and
demonstrate: (1) unreasonable attorney performance, and (2) Prejudice.
Strickland, requires the Court to focus, not upon whether counsel could
have done a better job, but upon whether counsel provided the assistance
necessary to ensure fundamental fairness in the proceedings whose
result is being challanged.  Williams v. Washington, 59 F.3d 673, at
679 (7th Cir. 1995).

"An attorney does not provide effective assistance if he fails
to investigate sources of evidence which may be helpful to the defense".
Davis v. Alabama, 596 F.2d 1234, at 1217 (5th Cir. 1979); See also:
Goodwin v. Balkcom, 684 F.2d 794, at 805 (11th Cir. 1982)("[a]t the
heart of effective representation is the independent duty to investigate
and prepare".) Like here, it is inexplicable to explain why counsel
failed to move for the need of a qualified expert in firearms, or to

-27-

reasonably familiarize himself with "Trigger Pressures" to this type of weapon since it was part of his presented defense that it was an "accidental shooting" where the weapon went off when it was bumped by the victim, It's inexplicable to explain why counsel failed to present "expert" testimony through qualified "Experts" to support his presented defense that such a "bump" could have caused the weapon to discharge if only a slight pressure was on the trigger, or whether such weapons based on it's age or wear could have a (Hair-Trigger) where the slightest touch could cause the weapon to discharge to support his presented defense. Failure to investigate the scientific aspects of the State's case and scientific evidence, constitutes ineffective assistance of Counsel. Demarest v. Price, 905 F.Supp. 1432 (D.Col. 1995). It's inexplicable to explain why counsel failed to make any independent effort to locate a potential eye-witness (Ericka Foster) or to interview other witnesses, especially where the State's case was essentially relying on the "Credibility" of only one such witness and his alleged out-of-Court Statement. All of which is ineffective assistance of counsel.

It is ineffective to allow the trier of fact to retire with a factually inaccurate impression. Driscoll v. Delo, 73 F.3d 701, at 707 (8th Cir. 1995) concerning the 15-pounds of trigger pressure required to discharge a 25.caiber semi-automatic which was solely based on the "Unproved Assumption" of the State's Attorney.. For these Reasons as set forth herein, the Court must hold that counsel was ineffective, and fell below the reasonable standards of competent representation and thereafter, Order a New Trial.

## CLAIM - VII

**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL BY APPELLATE COUNSEL'S FAILURE TO RAISE VARIOUS CONSTITUTIONALLY COGNIZABLE CLAIMS ON DIRECT APPEAL, THUS, DEPRIVING PETITIONER OF HIS RIGHTS AS PROVIDED BY THE UNITED STATES CONSTITUTION AS WELL AS THE ILLINOIS CONSTITUTION OF 1970.**

Appellate counsel on Direct review was ineffective for not raising cognizable Constitutional Claims evidenced in the Record, some of which is presented in this Amended Petition, such as the ineffective assistance of counsel claims, where there was 'some' evidence of "Neglect" in the record, and prosecutorial misconduct claims, where there was 'some' evidence in the record showing the State's knowing use of false perjured testimony to negate petitioners presented defense.

Petitioner suffered "Prejudice" by Appellate counsel's failure to raise the various issues on Direct Appeal.

## STATEMENT OF AUTHORITY

The failure of Appellate counsel to recognize Constitutional deficiencies and bring them to the attention of the State reviewing Court is inconsistent with effective appellate representation. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830 (1985). Where Appellate counsel's performance is objectively unreasonable and deficient, the failure to raise issue on appeal will constitute "Cause and Prejudice". See: Freeman v. Lane, 062 F.2d 1252 (7th Cir. 1991).

CONCLUSION

Based on the beforementioned Claims of Constitutional deprivations as set forth in this "Amended Petition" for Post-Conviction Relief, It is respectfully Prayed that counsel be appointed, to assist the Petitioner and the Court, Review the pre-trial Discovery Material and "Amend" any other claims discovered therein into this Petition, Order an Evidentiary Hearing, and thereafter Order a New Trial for the beforestated reasons.

Respectfully submitted,

_____
SAM COOK B-39841 (Petitioner-Affiant)
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

SUBSCRIBED and SWORN to before me a NOTARY PUBLIC on this _____ day of _____, 2004.

OFFICIAL SEAL
SHERWIN K. MILES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2006

_____          _____
My Commission Expires:            NOTARY PUBLIC:
(SEAL)

-30-